**IN THE UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **JOSEPHINE REGALADO,** ) | |
| **Plaintiff,** ) | |
| ) | |
| **V.** ) | |
| ) | **No. 09 CV 0754** |
| **CHICAGO POLICE OFFICER TIMOTHY HAYES,** ) | |
| **JACK MESECK, MICHAEL PUTROW, and** ) | **JUDGE THARP** |
| **The CITY OF CHICAGO,** ) | |
| **Defendants.** ) | |
| ) | **Magistrate Judge FINNEGAN** |

**PLAIINTIFF'S MOTIONS IN LIMINE**

**1. MOTION TO EXCLUDE WITNESSES**

The Plaintiff makes a motion to exclude any witnesses who will or may be called to testify at her trial.

**2. MOTION TO ALLOW PLAINTIFF TO CALL PARTY AND NON-PARTY CITY POLICE OFFICERS AS ADVERSE WITNESSES**

The Plaintiff intends to call police officers she listed in the Pre-Trial Order. She plans to call both the Defendants and police officer witnesses. Under Federal Rule of Evidence 611(c), leading questions may be used on direct examination of a "witness identified with an adverse party." When the city is a Defendant to a §1983 claim, police officers employed by the city and who were present during portions of the incident at issue are "clearly qualified as a 'witness identified with an adverse party.'" *Ellis v. City of Chicago*, 667 F.2d 606, 612-13 (7th Cir. 1981).

1

The Plaintiff requests that she be allowed to call the Chicago police officers Defendants and witnesses as adverse witnesses and pose leading questions to them.

3. **PRIOR CONVICTIONS and/or ARRESTS OF THE PLAINTIFF JOSEPHINE REGALADO and JOSEPH RAMIREZ**

   **a. Josephine Regalado**

Fed. R. Evid. 609 provides that misdemeanor convictions may be admitted only if the court determines that the probative value of admitting the evidence outweighs the prejudicial effect to the accused. Further, Fed. R. Evid. 609(a)(1) prohibits the admission of evidence of convictions unless the convictions involve dishonesty or false statements. *Gust v. Jones,* 162 F. 3d 587, 595 (10th Cir. 1998). On December 22, 2007, Plaintiff was arrested and charged with a retail shoplifting. She received one year supervision, which she satisfactorily completed. The supervision is not considered a conviction. It is the Plaintiff's position that she does not have any convictions.

Additionally, the Plaintiff was arrested on August 13, 2007. That case was dismissed on September 11, 2007. It is well established that arrests that do not lead to a conviction are excludable under Fed. R. Evid. 404(b). *Anderson v. Sternes*, 243 F. 3d 1049, 1054 (7th Cir. 2001). Examination concerning arrests that did not lead to convictions is beyond the scope of Fed. R. Evid. 609. Arrests are both irrelevant and highly prejudicial.

The potential for prejudice is high and arrests have little probative value since arrests without more do not impeach the integrity or credibility of a witness. *U.S. v. Wilson*, 244 F. 3d 1208 (10th Cir. 2001).

Courts have uniformly ruled that prior arrests are not admissible. *Brandon v. Village of Maywood,* 179 F. Supp. 2d 847, 854 (N.D. Il. 2001), *Caldwell v. City of Chicago,* 2010 WL 380696 *1, (1/29/10, Judge Der-Yeghiayan,), *Christmas v. City of Chicago,* 691 F. Supp. 2d 811, 817-818, (N.D. Il. 2010), *Gonzalez v. City of Elgin*, 2010 WL 2926234 *3, (7/23/10, Judge St. Eve,), *Gribben v. City of Summit et al,* 08 C 0123, (7/20/10, Dkt. 66, p. 6, Judge Keys,), *Maldonado v. Stinar et al,* 2010 WL 3075680 *6, (8/5/10, Judge Nolan), *Townsend v. Benya*, 287 F. Supp. 868, 874 (N.D. Ill. 2003) citing *U.S. v. Neely*, 980 F. 2d. 1074, 1080 (7th Cir. 1992).

**b. Joseph Ramirez**

It is the Plaintiff's understanding based on a review of the criminal history of Joseph Ramirez tendered to the Plaintiff by the Defendants that Joseph Ramirez has been arrested 19 times.

Of the 19, 15 of the cases have been dismissed or Mr. Ramirez was found not guilty. Plaintiff adopts the same argument regarding these arrests that do not lead to convictions as she did for her arrests.

The remaining four convictions are as follows:

1. On February 19, 2011, Mr. Ramirez pled guilty to possession of a gun by a felon and was sentenced to Cook County Department boot camp. The Plaintiff does not move to exclude evidence that he was convicted as a result of his arrest on January 25, 2010. The Plaintiff does move to exclude a specific reference to the offense of possession of a gun, which will be addressed in a separate motion in *limine*. As addressed below, the issue of a gun is irrelevant to any issue in this case thus it has little probative value. Its potential for prejudice cannot be overestimated, particularly given recent events in the City of Chicago concerning the high rate of

shootings and homicides.   Plaintiff proposes that the reference to the conviction be that Joseph

Ramirez pled guilty to a felony as a result of his arrest on January 25, 2010.

2.   On December 28, 2007, Mr. Ramirez was arrested and charged with possession of a

gun.  On September 18, 2008, he pled guilty to possession of a gun and was given two years

probation, which he successfully completed.  The charge for which he was convicted is irrelevant

to the existence of probable cause to arrest the Plaintiff.  His conviction has nothing to do with

any issue in this case.  The Defendants may attempt to introduce evidence of this conviction to

discredit Mr. Ramirez.  The prejudice that would result from the admission of evidence of this

conviction is not outweighed by its probative value.  Although occurring within the last ten

years, this court has the discretion to exclude this charge.  Fed. R. Evid. 609 and 403.  *United

States v. Galati*, 230 F. 3d 254, 261-263 (7th Cir. 2000).  The court applies a balancing test to

determine if the probative value of the admission of this felony is outweighed by the prejudicial

impact of the jury's knowledge that the Mr. Ramirez has a felony conviction .  A balancing test

establishes that the prejudice to the Plaintiff from the jury's knowledge that the Mr. Ramirez was

convicted of a felony will be extremely and insurmountably prejudicial to the Plaintiff.

Additionally, this conviction has absolutely nothing to do with the purpose of admitting

convictions, which is to determine if the witness is deceitful.  Fed. R. Evid. R. 608.  The

possession of a gun is not a crime that "concerns the witnesses' character for truthfulness or

untruthfulness." Fed. R. Evid. R. 608.

Nor should this evidence be admitted since the issue is not Mr. Ramirez's propensity to

commit a crime, but rather did these Defendants have probable cause to arrest the Plaintiff.

Thus, the introduction of this evidence would not be in the least probative about the Plaintiff's

motive, opportunity or knowledge.  *Huddleston v. United States,* 485 U.S. 681, 685 (1988).  If

this conviction is admitted, the Plaintiff requests that the Court limit the evidence to be admitted to the fact that Joseph Ramirez was convicted of a felony.

3. On July 13, 2001, Mr. Ramirez was arrested and charged with possession of a weapon and various misdemeanor and ordinance violations. The misdemeanor and ordinance violations were dismissed. On April 20, 2004, Mr. Ramirez pled guilty to possession of a weapon and defacing a weapon. The arrest happened outside the ten year period and thus the arrest and conviction should not be admitted into evidence. The Plaintiff adopts the same arguments regarding its admission as she made above. As above, the prejudice to the Plaintiff far outweighs the dubious probative value of the evidence.

4. On August 28, 1999, Mr. Ramirez was arrested and charged with a misdemeanor possession of cannibas. On August 30, 1999, Mr. Ramirez was given three months Supervision. No reference to this arrest should be made since it is outside the ten year period and, as discussed above, Supervision is not a conviction.

## 4. MOTION TO EXCLUDE EVIDENCE OF DEFENDANTS' AWARDS OR COMMENDATIONS AND THE WEARING OF MEDALS OR RIBBONS OF OFFICE

Plaintiff Josephine Regalado requests that any evidence of awards or commendations received by any of the Defendants be excluded and that the Defendants not be permitted to wear medals or ribbons of office during the trial that they have received as police officers.

The Defendants may have received awards and commendations regarding their behavior. Additionally, the Defendants have likely received medals and ribbons in acknowledgment of their service for the Chicago Police Department.

Evidence that the Defendants have received awards, commendations, medals and

ribbons is not relevant to any issue to be decided by the jury in this case, and thus is not

admissible.  Fed. R. Evid. R. 401, 402.

Moreover, even if such awards etc. are deemed to have some probative value, this value

is substantially outweighed by the danger of unfair prejudice and confusion of the jury, since

Defendants could seek to use them to unjustly add to the credibility of the Defendants.[1] Thus, the

awards and commendation should be excluded under Fed. R. Evid. R. 403.  *Sughayyer v. City of

Chicago*, 2011 U.S. Dist. LEXIS 60143, 2011 WL 20366 *4 (N. D. Ill.); *Tolliver v. Gonzalez*,

2011 U.S. Dist. LEXIS 125432, 2011 WL 5 169428 *1 (N.D. Ill.); *White v. Gerardot*, 2008 U.S.

Dist. LEXIS 87763, 3-4 (N.D. Ind.).

Additionally, permitting a Defendant to be present and to testify in Court wearing

medals or ribbons, or to testify regarding awards and commendations, would constitute character

evidence which is generally inadmissible pursuant to Fed. R. Evid. R. 404 (a). *Graham v.

Bennett*, 2007 U.S. Dist. LEXIS 17902, 9-10 (C.D. Ill.) ("Evidence of prior commendations

could serve the improper function of providing evidence of action in conformity with

Defendant's prior good performance on the police force.").


## 5. MOTION TO BAR THE DEFENDANTS FROM REFERRING TO THE COMPLAINTIN THIS MATTER

The Plaintiff seeks to bar the Defendants from using Plaintiff's unverified complaint as

evidence or to impeach Plaintiff at trial.  Plaintiff contends that because the complaint is an

unsworn statement prepared by counsel, it cannot be used for impeachment purposes.   Since the

allegations contained in Plaintiff's complaint were not made under oath, they may not be used as

---

[1] Plaintiffs do not object to Defendants wearing insignia indicating their rank.

prior statements of the Plaintiff to impeach her. *See Bolden v. Ramos*, No. 93 C. 3416, 1996 WL

66135, at *4 ( Feb. 13, 1996).

**6. MOTION TO BAR THE DEFENDANTS FROM REFERRING TO OR USING DOCUMENTARY EVIDENCE REGARDING JOSEPH RAMIREZ'S ALLEGED MEMBERSHIP IN A GANG, GANG DRAWINGS, GANG T-SHRITS OR PARAPHENALIA OR ANY REFERENCE TO GANGS WHATSOEVER OR TO THE TERM BISHOPS**

In this case, there is no evidence or even an allegation that Josephine Regalado is a

member of a gang or had any knowledge about gangs. The Defendants, however, allege, without

proof, that Joseph Ramirez, in whose apartment the Defendants arrested Josephine Regalado on

January 25, 2010, was a gang member. It is the Plaintiff's belief that the Defendants will try to

bring in Joseph Ramirez's alleged membership in a gang called the Bishops. Notably, Mr.

Ramirez denied being a member of the Bishops gang in his deposition. Additionally, the

Defendants will attempt to show photographs with the word Bishop and a wood carving with the

word Bishop on it. There is also a photograph with writing on it that the Defendants may

attempt to say is gang related. None of this evidence is relevant to any issue in this case.

On January 25, 2010, the Defendants and other Chicago police officers executed a search

warrant at the residence of Joseph Ramirez at 3510 S. Halsted in Chicago. When they entered

the apartment where Mr. Ramirez resided, Ms. Regalado was present, but Mr. Ramirez had gone

to work. The basis for the search warrant was that the Defendants claimed that they had received

information from an unnamed person that Joseph Ramirez was selling cocaine from his

residence. The Defendants do not claim that any information they received prior to executing the

search warrant indicated that Mr. Ramirez belonged to a gang or that any of his activities were

gang related. The Defendants do not claim that any alleged evidence regarding Mr. Ramirez's

alleged participation in or affiliation with the Bishop street gang they recovered as a result of the

7

execution of the search warrant contributed in any way to establishing probable cause to arrest Josephine Regalado or even Mr. Ramirez.

Thus, evidence, references, exhibits regarding Mr. Ramirez's alleged membership in a gang or photographs or objects purporting to demonstrate Mr. Ramirez's membership or affiliation with a gang are irrelevant to any issue in this case.

However, their introduction would be extremely prejudicial. As Courts in both the Northern District of Illinois and the 7th Circuit Court of Appeals have held, the mention of references to gangs is extremely prejudicial. *United States v. Irvin*, 87 F. 3d 860, 865 (7th Cir. 1996), and see *United States v. Harris,* 587 F. 3d 861, 867 (7th Cir. 2009) (courts should carefully consider whether to admit gang membership and gang activity in criminal prosecutions), *United States v. Clemons,* 202 F. Supp. 767, 775-776 (N. D. Ill. 2002), (discusses the extreme prejudice that can occur in Chicago when evidence of gangs is admitted), *Charles v. Cotter,* 867 F. Supp. 648, 658 (N.D. Ill. 1994) (identifying the Plaintiff as a gang member was unduly prejudicial since it encouraged the inference that the Plaintiff was an evil person), *Lopez et al v. City of Chicago,* (01 C 1823, 3/8/05, Judge Der Yeghiayan, Dkt. 212 *5) (admission of testimony regarding gangs was not admitted), *Guzman v. City of Chicago et al,* (05 C 06617, 2/25/10, Judge Manning, Dkt. 193), *Taylor v. City of Chicago, et al.,* (09 C 05092, 8/24/12, Judge Shadur, Dkt. 76).

In comparison with the above cases, there is even less relevance, zero probative value and more threat of prejudice if the Defendants are able to introduce evidence regarding gangs, gang paraphernalia and Mr. Ramirez's alleged gang involvement. Since Mr. Ramirez's alleged (and disputed) membership in a gang is irrelevant to the existence of probable cause to arrest the

Plaintiff, it is obvious that any evidence of alleged gang membership, gang paraphernalia or photographs would be introduced only to prejudice the jury against the Plaintiff while conversely it has no probative value whatsoever.

Given recent news events in the City of Chicago that have highlighted gang shootings, the issue of gangs is very much on the public mind. Due to the extreme prejudice that will result from the introduction of this inflammatory and irrelevant evidence, the Plaintiff reiterates that any reference to gangs, gang membership, gang photographs, or other paraphernalia not be admitted in this trial.

Further, there has been no evidence whatsoever that any of the Defendants or any other person has been qualified as an expert to testify regarding gangs. The Defendants have not listed anyone as an expert on gangs. No Defendant or witness in this matter has been identified as an expert on gangs. To allow a police officer to opine on the issue of gang membership and gang paraphernalia is beyond the purview of any of the Defendants' or their witnesses' expertise. The Courts will consider admitting testimony regarding the issue of gangs if, *inter alia*, the witness who will testify about gangs has been qualified as an expert. *U.S. v. Malone*, 445 F. Supp. 2d 977, 986 (N.D. Il. 2006).

It is obvious that the only purpose for the introduction of evidence about gangs is to prejudice the jury against the Plaintiff. This evidence, which is questionable, has no probative value yet would be extremely prejudicial. The Plaintiff requests that all evidence relating to gangs be excluded from this trial.

**7. MOTION TO BAR THE DEFENDANTS FROM REFERRING TO A GUN OR AMMUNITION RECOVERED FROM 3502 s. HALSTED ON JANUARY 25, 2010**

On January 25, 2010, the Defendants claim, and the Plaintiff does not dispute for purposes of this motion, that they recovered a gun and ammunition from a closet at 3510 S. Halsted. The Defendants arrested Mr. Ramirez but did not arrest the Plaintiff for possession of a gun or bullets. [2] No Defendant or any Chicago police officer present during the search ever saw the Plaintiff in possession of the gun or the bullets. Additionally, the officers intentionally handled the gun making it impossible to recover fingerprints from the gun or the bullets. The outcome is that there are no fingerprints linking the Plaintiff to the gun, ammunition or the location where the gun was recovered. Nor is there any credible evidence that the Plaintiff knew of the existence or presence of the gun. In fact, testimony from Joseph Ramirez established that he hid the gun and bullets in a glove to ensure that the Plaintiff did not see the gun and bullets. He did this since he knew she would not go out with him if she knew he had a gun and bullets.

The fact that J. Doe apparently did not mention a gun or bullets to Defendants Hayes and Putrow further establishes that the gun was not visible. This is established since the search warrant for Joseph Ramirez and the premises at 3510 S. Halsted did not make a reference to guns or ammunition.

Relevant evidence is that which tends to prove or disprove an issue that is "of consequence to the determination of the action." Federal Rule of Evidence 401. That the gun and ammunition were confiscated from the apartment is not of consequence to any of the issues in this case.

---

[2] Interestingly, the Plaintiff, who had no prior convictions, was charged as a result of Defendant Hayes' Grand Jury testimony, with a felony charge of being a felon in possession of a gun. Although this charge was nolled prossed prior to the Plaintiff's bench trial, this charge only added to the Plaintiff's emotional suffering which commenced with her false arrest by the Defendants.

As with any reference to gangs, there is absolutely no probative value to the admission of evidence regarding a gun or bullets. The only purpose the Defendants can possibly have for the admission of evidence about a gun or bullets – let alone the gun or bullets themselves – is to prejudice the jury against the Plaintiff. This is an impermissible reason. To some jurors, the existence of a gun and ammunition in the apartment may cause irremediable prejudice against the Plaintiff.

The presence or absence of a gun and ammunition is irrelevant to the issue of the existence of the Defendants' possession of probable cause to arrest the Plaintiff for possession of cocaine with intent to deliver. The existence of a gun and bullets is irrelevant to any issue in this case. The Defendants cannot justify its entry into evidence by any reason other than to prejudice the jury against the Plaintiff. No evidence or reference to a gun or bullets should be admitted into the trial.

Further, the Defendants have not listed the gun and ammunition in their 26(a)s and thus they cannot be admitted into evidence.

For these reasons, any reference to the gun should be barred pursuant to Federal Rules of Evidence 402, 403 and 404.

## 8.  MOTION TO PRECLUDE THE DEFENDANTS FROM USING IMPROPER BACK GROUND CHECKS ON JURORS

The Defendants' attorneys have access to certain databases, including CLEAR (Citizen Law Enforcement and Reporting), which allow them to check on the criminal background of jurors or potential jurors. Plaintiff's attorneys do not have access to CLEAR or LEADS (Law Enforcement Agencies Data System) upon which background checks can also be done. *See, e.g.*

20 Ill. Adm. Code 1240.50 and 1240.80 (LEADS information is restricted and no personal use is allowed).

The Plaintiff's attorneys are aware that in other cases during the trial, including after a jury has been empanelled; attorneys representing the City of Chicago have used either the City of Chicago owned CLEAR database, or possibly other databases, to obtain information about jurors. *Anderson et al v. City of Chicago et al*, 09 C 2311, 6/ 9/ 2011, Dkt. 136. See, e.g., *Williams v. City of Chicago*, *et al.*, 08 C 6409, 3/24/22,  Dkt. 152, ; *Hill v. City of Chicago, et al.*, 06 C 6772,6/30/11,  Dkt. 562, (all background checks by the Defendants banned).

When the Defendant's review of the database indicates that a juror has either been arrested or convicted and that juror denied being arrested or convicted during voir dire, the Defendants' attorneys can, if and when they so desire, use this information to get rid of jurors who appear to be favorable to the Plaintiff's version of events.

If the Defendants have this information, they can then decide to wait until sometime during the course of the trial to bring to the Court's attention the inaccuracy between what the juror testified to during voir dire and the information in their possession.

Alternatively, if the Defendants obtain information which indicates that a juror who they believe is favorable to them was not honest during the voir dire, they are under no obligation to disclose that information to the Plaintiff.

There are various problems with this use of information to which the Plaintiff had no access.  Access to this information gives an obviously unfair advantage to the Defendants. Instead of challenging the prospective juror during voir dire and allowing the Plaintiff to be aware of the issue, the Defendants can "spring" this information if and when it is convenient to them.  Additionally, if the Plaintiff had known that a particular juror would be excused either for

cause or challenged by the Defendants, the Plaintiff may have used her peremptory challenges differently.

## 9. MOTION TO PRECLUDE THE DEFENDANTS FROM INTRODUCING EVIDENCE OR ARGURING THAT THE DEFENDANTS ARE UNABLE TO PAY PUNITIVIE DAMAGES

If defendant officers make their financial condition an issue in this case by defending punitive damages claim with a claim of financial hardship, then they open the door to evidence, a jury instruction, and argument that Defendant officers will be indemnified by the City of Chicago for compensatory damages. "If defendants open the door by introducing evidence that they are personally responsible for punitive damages, judges in this district generally permit Plaintiffs to inform the jury that defendants will be indemnified for compensatory damages." *Hillard v. City of Chicago, Ill.*, 2010 WL 1664941, *4, 4/23/2010 (Conlon, J.); *Betts v. City of Chicago,* 09 C 4095, Opinion and Order at Document 88, 5/13/ 2011 (". . . [I]f the defendants plead poverty as to any damages, [Plaintiff] may offer evidence of indemnification") (Gottschall, J.); *Delgado v. Mak*, 2008 WL 4367458, *4, 3/31/ 2008)(Dow, J). *Galvan v. Norberg*, 2006 WL 1343680, *2, 5/10/2006) (Shadur,J.),"[D]efense counsel should be aware that if they plan to apprise the jury of the fact that the individual officers will have to bear [punitive] damages out of their own pockets, fairness would require that the jury also be informed of the true situation (indemnification) as to compensatory damages" *Regalado v. City of Chicago*, 1998 WL 919712, *1(N.D.Ill.1998)(Shadur, J.).[3]

If Defendant officers claim financial hardship in defense to a claim for punitive damages, then the jury should be informed through evidence, jury instruction, and argument

---

[3] Note, the Regalado in this case is not the Plaintiff.

that Defendants will be indemnified for compensatory damages.

It is improper to allow a Defendant to "plead poverty if he will be indemnified." *Kemezy v. Peters*, 79 F.3d 33, 37 (7th Cir. 1996). While the general rule is that evidence of indemnification should be excluded because it may encourage a jury to inflate its damages award because it knows the government, not the individual defendants, is footing the bill, the rationale for applying the general rule dissolves once defendants make their financial circumstances an issue by their testimony or other evidence in the damages phase of the trial. At that point, their direct testimony "opens the door" and Plaintiff should be permitted to cite and rely upon the state's indemnification statute. *Lawson v. Trowbridge,* 153 F.3d 368, 379 (7thCir.1998).

## 10.  MOTION TO EXCLUDE REFERENCES TO THE PLAINTIFF'S USE OF A CHICAGO ADDRESS FOR HIGH SCHOOL PURPOSES WHEN SHE WAS A MINOR

During the Plaintiff's deposition, the counsel for the defendants repeatedly questioned the Plaintiff regarding her residence.  The Plaintiff repeatedly testified that she lives in Lyons, Illinois with her mother, step-father and younger brother.  Since the Plaintiff has submitted an abundance of evidence to document this, it can hardly be in dispute.  For example, she submitted her driver's license, her school records, her phone bill, credit card bills and other documents.

During her deposition, the Defendants' counsel elicited testimony that when the Plaintiff was 13 or 14 years old she attended a public school in Chicago even though she lived in Lyons, Illinois.  This is highly irrelevant evidence, yet the Defendants may try to introduce testimony regarding this to somehow try to establish that the Plaintiff was not living in Lyons, Illinois at the time of her arrest.  At age 13 or 14, it should be obvious that the person or persons who registered the Plaintiff for school were her parents.  If they chose to have the Plaintiff remain in a

Chicago school, and used a Chicago address to that end, that is irrelevant to any issue in this case.  No evidence regarding the address used by the Plaintiff, or that fact that an address was used when the Plaintiff was a minor to register her in school, should be admitted.

## 11.  MOTION TO EXCLUDE SPECULATION AS TO WHY THE DEFENDANTS MIGHT HAVE ARRESTED THE PLAINTIFF

Speculative testimony would be extremely prejudicial to Plaintiff regarding the various reasons why a police officer *might* arrest, or search a citizen would include some dangerous and inflammatory situations which do not relate to Plaintiff's situation. See *Fed.R. Evid. 402, 403.* The reasonableness of a arrest of a person turns on what the officers *actually knew* at the time of the arrest, not what they might have known, should have known, or found out later. *See e.g., Carmichael v. Village of Palatine, Illinois,* 605 F.3d 451 (7th Cir.2010). Defense counsel should not be allowed to improperly garner sympathy for police officers having a dangerous job by presenting irrelevant facts that are prejudicial to Plaintiff. Defense counsel should not be allowed to plant seeds of doubt in the jury's mind as to what really happened the day Plaintiff was arrested by defendant officers, by making up scenarios for which there was not even an iota of proof.  Speculative evidence of what might have happened is not relevant and it would be "substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." *Fed.R. Evid. 402, 403.*

## 12. MOTION TO BAR CERTAIN WITNESSES FROM TESTIFYING

### a. Assistant States' Attorneys Kevin Sobczyk

Plaintiff moves to bar speculative, irrelevant and improper testimony of Assistant State's

Attorney Kevin Sobczyk regarding the Grand Jury hearing that was held on February 18, 2010. The Defendants have provided no documents, notes or any evidence whatsoever regarding Attorney Sobczyk. Attorney Sobczyk questioned the sole witness to testify at the Grand Jury hearing which led to the Plaintiff's indictment, Defendant Timothy Hayes. Assistant State's Attorney Sobczyk is listed in the Defendants' 26(a)s as a person who may have evidence regarding the criminal charges against the Plaintiff.

As this Court is well aware, the issues in the case can be summarized as follows: Did the Defendants falsely arrest and maliciously prosecute the Plaintiff? Nothing that Assistant State's Attorney Sobczyk has to say has any relevance to this issue.

Assistant State's Attorney cannot be a witness to testify that the fact that a Grand Jury indicted the Plaintiff established that probable cause existed for her arrest. As this Court is aware, unfortunately, grand juries in Cook County too often fulfill the role of approving charges brought by the State's Attorney without challenge or question. The alternative of a preliminary hearing would have provided the Plaintiff the opportunity to challenge the evidence and cross-examine Officer Hayes. The choice of a grand jury hearing held behind closed doors instead of choosing to present the evidence in the open where the Plaintiff could challenge it hardly confers confidence in the strength of the case or the integrity of the system.

In any case, it certainly does not confer any relevance whatsoever to the testimony of the Assistant State's Attorney.

### b. Boras Djulabic and James Murphy Aguilu

Attorneys Djulabic and Aguilu are the Assistant State's Attorneys who prosecuted the Plaintiff at her bench trial held before the Honorable Judge Linn and they are listed in the Defendants' 26(a)s in that capacity. The Defendants have tendered no notes, reports or any

evidence by either attorney that would establish that they have any relevance whatsoever to this case. They cannot testify as to their opinion regarding the case. They are not experts. There is no reason why they should testify.

First, the state's attorneys should not be allowed to cast aspersions on or impugn the decision of the criminal court judge. The judge made a finding that the Plaintiff was not guilty of all charges. While that decision does not have collateral estoppel effect on the § 1983 case, it is certainly important evidence for the Plaintiff.

Appellate courts have supported the integrity of court decisions, even when they may be wrong. For example, when a magistrate judge signs a search warrant the courts give "great deference" to the issuing judge's conclusion that probable cause has been established. *United States v. Sims,* 551 F.3d 640, 643-44 (7th Cir.2008); *United States v. Garcia,* 528 F.3d 481, 485 (7th Cir.2008). The courts have deferred to and given collateral estoppel effect to the

In *Heck v. Humphrey,* 512 U.S. 477, 484-85, 144 S.Ct.2364 (1994), the Supreme Court held that a collateral attack of a criminal conviction through the vehicle of a civil suit should not be allowed, because of "a strong judicial policy against the creation of two conflicting resolutions arising out of the same or identical transaction." *Id.* at 484. Plaintiff would argue here that the converse is also true. A collateral attack of the *finding of not guilty of a criminal charge* because of a lack of evidence through testimony from an Assistant State's Attorney should not be allowed.

The State's Attorney is not a party to this civil rights action and collateral estoppel concepts do not apply. Nonetheless, Plaintiff asserts that the State's Attorney's Office should not be allowed to infer by the expert testimony of one of their employees that the decision of the criminal court judge was incorrect. See *Sornberger v. City of Knoxville, Illinois*, 434 F.3d 1006,

1021 (7th Cir.2004) (discussion of barring collateral estoppel against a party when that party has no chance to appeal an adverse decision).

Second, Defendants have tendered no expert disclosure pursuant to Fed. R. Civ. P. 26(a)(2). The Assistant State's Attorneys should therefore not be allowed to give an opinion as to why there was a finding of not guilty. This testimony would be hearsay, speculative, and improper expert opinion evidence. See *Tribble v. Evangelides,* 670 F.3d 753 (7th Cir. January 26, 2012) (Asst. State's Attorney was improper expert witness).

### c. Kristine Dillow Benak

The Defendants apparently want to beat a dead horse by persisting in listing Ms. Dillow Benak as a witness. Twice, the issue has come up before the Honorable Judge Kendall. Both times, the relevance of Ms. Dillow Benak was the issue. Both times, the Plaintiff's attorneys informed the Court that the Plaintiff was not contesting that the items recovered from the apartment at 3502 S. Halsted were controlled substances or cannibas. Both times, Judge Kendall recognized that the nature and weight of the controlled substances and the cannibas which were recovered were not an issue. So, the Plaintiff is mystified why the Defendants persist in listing Ms. Dillow Benak as a witness.

In Defendants' 26(a)s, Ms. Dillow Benak is listed as a witness who performed laboratory testing on the substances recovered. The Defendants also stated that they had no experts at the time of submitting their 26(a). No other reason was given why she would be called as a witness. Since the amount and the nature of the contraband are not in dispute, there is absolutely no legitimate reason whatsoever to call her as a witness. As the Defendants' counsel knows, on March 19, 2012, Plaintiff's attorneys confirmed in writing that they agreed to stipulate to the amount of controlled substances and cannibas recovered from 3502 S. Halsted.

Judge Kendall ordered that all expert disclosure be made by November 13, 2011 (Dkt. 16). On March 1, 2012, the Defendants, for the first time, almost four months after the close of expert disclosure, listed Ms. Dillow Benak as an expert witness on testing procedures and the weight of the recovered substances.

The Defendants disclosure of their expert, made months past the close of expert disclosure, had no justification and is certainly not harmless. Fed. R. Civ.P.37(c)(1), *Finley v. Marathon Oil Co.,* 75 F.3d 1225, 1230 (7th Cir.1996). Had Defendants disclosed the Ms Dillow Benak as an expert, then Plaintiff could have sought to disqualify her, retained rebuttal experts, or taken her deposition to obtain information not available because of an absence of a report. The Defendants have never tendered her CV or resume, copies of any depositions in which she has testified, or any publications she has written. They have not provided any information as to whether she has ever been qualified or disqualified as an expert. They have not provided any treatises she has written. They have not disclosed any fees she has been paid by the Corporation Counsel's office or the Chicago police.

Nor have they even disclosed in writing the nature of her testimony.

In Court on April 2, 2012, Plaintiff's attorney brought this issue to the Court's attention. At that time, it was agreed by the attorneys that there was no need to have Ms. Dillow Benak testify.

The federal rules of civil procedure divide potential witnesses into three categories for the purposes of disclosure. *Musser v. Gentiva Health Services,* 356 F.3d 751, 756 (7th Cir.2004). The first group, fact witnesses, are witnesses who are "likely to have discoverable information that the disclosing party may use to support its claims or defenses, unless solely for impeachment." A party must disclose the name, address, phone number, and subjects of

the witness' information. Fed.R.Civ.P. 26(a)(1)(A).

The second and third group are witnesses providing expert testimony, which would be Ms. Dillow Benak's testimony. Under Fed.R.Civ.P. 26(a)(2)(A), the second group are witnesses who may be used at trial to present evidence under Fed.R.Evid. 702, 703, or 705. In addition to the fact that witness disclosure is required, a party must disclose that a witness in this second group will present expert testimony. Under Fed.R.Civ.P. 26(a)(2)(B), the third group are witnesses who are "retained or specially employed to provide expert testimony in the case . . ." For this third group, a party must provide a written report containing a complete statement of all opinions to be expressed and the basis and reasons therefore; the data considered; exhibits to be used to support the opinions; qualifications; compensation to be paid; and a list of other cases in which the expert has testified in the preceding four years.

The Plaintiff requests that none of these witnesses be allowed to testify.


## 13. MOTION TO EXCLUDE THE ILLINOIS STATE POLICE REPORT TESTING THE WEIGHT OF THE SUBSTANCES RECOVERED FROM THE APARTMENT and TO EXCLUDE PRODUCTION AND PRESENTATION IN COURT OF THE CONTROLLED SUBSTANCES

On January 29, 2010, the Illinois State Police prepared a Laboratory Report which listed the controlled substances and the cannibas which were recovered and the weight of each tested item. The suspect listed on the report is Joseph Ramirez. The report is neither relevant nor probative to the probable cause issue and is prejudicial to Plaintiff. It does not matter whether what the police had in their custody was actually a controlled substance or not. Plaintiff maintains she had no controlled substance on her person or in her control. She further maintains

that she didn't even know of the presence of the controlled substances and the cannibas. It's weight is irrelevant to any issue in this case.

Further, it is totally irrelevant and very prejudicial for the Defendants to bring in the actual cocaine and cannibas that was recovered. For the above reasons, it is irrelevant to any issue in this case. Additionally, the Defendants have never disclosed in their 26(a)s that they intended to use the cocaine or cannibas as evidence. Admitting the cocaine and cannibas thus is not only irrelevant and prejudicial, but a violation of the Fed. R. Civ. Pro. 26(a) and 37.

What matters in the proof of this case is whether Defendants had probable cause to arrest Plaintiff for possession with intent to deliver controlled substances. For the above reasons, the physical evidence of suspect cannabis, the laboratory report and test results should be barred.


## 14. MOTION TO EXCLUDE ANY REFERENCE TO HOW THE PLAINTIFF RETAINED HER ATTORNEYS

During her deposition, the Defendants' Counsel inquired of the Plaintiff how she retained the services of her attorneys. This is irrelevant to any issue in this case. Any reference to the process by which Plaintiff's attorneys should be barred. *More v. City of Braidwood*, 08-05203, (9/7/10, Dkt. 75), (J. Manning).


## 15. MOTION TO LIMIT THE TESTIMONY OF CHICAGO POLICE OFFICER KIRNER

The Defendants disclosed that Chicago police officer Kirner is a witness in their 26(a)s. The Plaintiff initially sent the Defendants a notice of deposition for Officer Kirner. However, as the depositions of the Defendants and their witnesses progressed, it became apparent that Officer Kirner had minimal involvement in the events that transpired prior to the search of the apartment

at 3502 S. Halsted and during the search itself.  To that end, the attorneys for the Plaintiff and Defendant communicated via email regarding his testimony.  The Plaintiff informed the Defendants' attorney in writing that the Plaintiff would not depose Officer Kirner since he had no information regarding the incident which forms the basis for the Complaint prior to January 25, 2010 and he did not recover anything in the apartment.  If the Defendants persist in listing Officer Kirner as a witness or call him to testify at trial, then the Plaintiff requests that his testimony be limited to events of January 25, 2010 and that he be precluded from testifying that he recovered anything from the apartment on January 25, 2010.

## 15.  MOTION TO BAR THE DEFENDANTS FROM PORTRAYING THE POLICE AS HEROES OR TO EITHER GLAMORIZE OR DRAMATIZE THEIR WORK

It is possible that the Defendants or their witnesses may attempt to distract the jury from the facts of this case by portraying the police work they do as fraught with danger requiring scary risks.  They may attempt to testify and state or insinuate that they should be able to "cut corners" in their attempt to stop crime.  They may attempt to portray their work in a way that will garner sympathy from the jury.  None of this is relevant, yet it is extremely prejudicial to the Plaintiff. The issues are did the Defendants have probable cause to arrest the Plaintiff and did they maliciously prosecute her.  The Plaintiff requests that the Defendants and their witnesses be ordered to stick to the facts of this case and to refrain from making extraneous comments about the nature of their employment.  As examples, the Plaintiff requests that the Defendants and their witnesses do not make statements such as:

- Police officers do not falsely arrest people for no reason;

- Police officers do not maliciously prosecute people for no reason;

- Police officers do not use excessive force against people for no reason;

- Police officers are heroes;

- Police officers risk their lives every day;

- Police officers serve and protect you;

- Police officers get up every morning to face dangerous situations/fight criminals/protect us; and

-Police officers would never risk their careers by doing what Plaintiff alleges.

This is not an all-inclusive list of testimony that the Plaintiff requests the Defendants be ordered not to make. However, it is an example of testimony whose only purpose is to prejudice the jury in favor of the Defendants and should not be admitted. *Montanez v. Fico et al*, 10-04708, (Dkt. 101, 6/11/12)(J. Finnegan).


**16. MOTION TO BAR ANY POLICE OFFICER WHO DID NOT SEE THE COCAINE RECOVERED IN THE BEDROOM PRIOR TO IT BEING MOVED FROM OPINING AS TO WHERE THE COCAINE WAS RECOVERED OR HOW IT WAS PACKAGED AND TO BAR ANY POLICE OFFICER WHO DID NOT SEE AN OBJECT PRIOR TO IT WAS FOUND TESTIFYING AS TO WHERE THE OBJECT WAS FOUND AND IT WHAT CONDITION IT WAS FOUND**

The Defendants and their witnesses testified that there was an initial search of the apartment at 3502 S. Halsted and that an Officer Perez came with his sniffer dog Achilles to search the apartment. After that time, Officer Zattair claimed that he found the cocaine in the bedroom where the Plaintiff had been sleeping. Plaintiff understands that no other officer claims to have seen the cocaine prior to its recovery by Officer Zattair. Similarly, other drugs were found in the apartment. Yet, few of the Defendants or witnesses were present when the cocaine or cannibas was recovered. Different Defendants and the officer witnesses have all testified as to where the substances were located. This testimony is not based on firsthand knowledge, but rather hearsay. Testimony should be limited to what the Defendants and their

witnesses saw, not what they were told by others. To allow the Defendants and their witnesses to testify as to what they heard but did not see would only serve to bolster the testimony of other officers and is totally based on hearsay and inadmissible. Further, this testimony is based on after acquired information which is not admissible.

In a helpful case which discussed the use of deadly force, the Court laid out the following rule which is applicable to the facts of this case:

Knowledge of facts and circumstances gained after the fact (that the suspect was unarmed) has no place in the trial court's or jury's proper post-hoc analysis of the reasonableness of the actor's judgment. Were the rule otherwise, as the trial court ruled in this instance, the jury would possess more information than the officer possessed when he made the crucial decision. Thus, we are convinced that the objective reasonableness standard articulated in *Lester* requires that [the shooter's] liability be determined exclusively upon an examination and weighing of the information [the shooter] possessed immediately prior to and at the very moment he fired the fatal shot. The reception of evidence or any information beyond that which [the shooter] had and reasonably believed at the time he fired his revolver is improper, irrelevant and prejudicial to the determination of whether [the shooter] acted reasonably "under the circumstances."

*Sherrod v. Berry*, 856 F.2d 802, 805 (7th Cir. 1988).


Submitted by:                                        /s/Melinda Power
                                                     One of Plaintiff's Attorneys

Melinda Power and Sandeep Basran
West Town Law Office
2502 W. Division
Chicago, Il. 60622
773-278-6706